## FARACI v. FASSULO.

1. LANDLORD AND TENANT—EXPIRATION OF LEASE—HOLDING OVER—PRESUMPTIONS—INTENT.

   Where a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year, in the absence of any agreement to the contrary, and all that is necessary to complete the contract is the consent or acquiescence of the landlord.

2. SAME—PAYMENT OF RENT—ACCEPTANCE—TENANCY FROM YEAR TO YEAR.

   Where defendant leased premises for the period of two years at a certain yearly rental to be paid monthly in advance, and, after the expiration of the lease, continued to occupy the premises and pay the rent which the landlord accepted, without any other arrangement being made, the effect was to renew the tenancy from year to year.

3. SAME—EFFECT OF RELEASE OF SECURITY BY EXPIRATION OF LEASE.

   Since by the holding over the law does not imply a renewal of the lease, and the rights of the parties to possession do not depend upon a renewal of the same, they would not

The question as to whether holding over by a tenant after expiration of a term for years constitutes a new and separate term, distinct from that which preceded or followed, is discussed in a note in 25 L. R. A. (N. S.) 847.

be affected by the possible termination of the security for rent furnished by a chattel mortgage, given with the lease, on the expiration of the same.

4. SAME—PURPOSE FOR WHICH LEASED PREMISES ARE USED.

That the premises leased were occupied for business purposes rather than for a farm or a residence, does not overcome the legal presumption created by the holding over and the acceptance of rent by the landlord.

Error to Berrien; White (Charles E.), J. Submitted October 7, 1920. (Docket No. 47.) Decided December 21, 1920.

Summary proceedings by Antonio Faraci and others against Antonio Fassulo for the possession of leased premises. Judgment for plaintiffs. Defendant brings error. Reversed.

*George W. Bridgman,* for appellant.

*Cady & Andrews,* for appellees.

SHARPE, J. On April 3, 1916, one Emil Reick executed a written lease to defendant of certain premises in the city of Benton Harbor, consisting of a store room and basement, for the term of two years from April 1st of that year, to be occupied for a barber shop. It provided for an "annual rent of $144 in 12 monthly installments," payable on the first day of each month. The lease was in the usual form, except that it included a clause creating a chattel mortgage on "all goods, wares and merchandise, household furniture, fixtures or other property which are or shall be placed in or on said premises by him," to secure the rent due or to become due thereon.

Defendant entered into possession under the lease and regularly paid the rent provided for. When the two years expired he continued to occupy the premises

and pay the rent without anything being done or said concerning a new term. On July 14, 1919, Reick conveyed the premises by warranty deed to Antonio Faraci and Marguerite Faraci (husband and wife) and Pasquale Foresteiri and Angelina Foresteiri (husband and wife), and defendant made payment of rent, as reserved in the lease, to them up to January 1, 1920. On December 3, 1919, the plaintiffs, being three of the grantees named in said deed, served upon defendant a notice to quit on or before January 5, 1920, "for the reason that we intend to terminate your tenancy, and to repossess ourselves of such premises on the date above mentioned." On January 9, 1920, plaintiffs began summary proceedings to recover possession and obtained a judgment for restitution. On appeal to the circuit court a similar judgment was rendered, from which defendant has appealed.

The claim of defendant is thus stated by his counsel·

"That under the lease and the facts in this case there having been an annual rent reserved, he was a tenant from year to year which tenancy in any event would not expire until April 1, 1920, and the notice was insufficient to terminate the tenancy."

The plaintiffs contend that the holding over created a tenancy at will and was terminated by the month's notice to quit.

The rule applicable to a tenant holding over after the expiration of a term for years is thus stated in 24 Cyc. p. 1031:

"According to the great weight of authority, where a tenant under a demise for a year or more holds over at the end of his term without any new agreement with the landlord, he may be treated as a tenant from year to year. It is held, however, that a tenancy from year to year cannot be inferred from the mere fact of holding over by the tenant; the landlord must in some manner recognize the tenancy. Thus the receipt of

rent by the landlord from one so holding over indicates with certainty a design to continue the relation of landlord and tenant, and a tenancy from year to year will arise. Such intention should in each case be found and determined as a question of fact by the jury, and in so doing they may take into consideration the character of the property and the use to which the same is to be put, as well as the periods at which the rent is to be paid. The presumption of law that a tenant who by permission of his landlord holds over is a tenant from year to year may be rebutted by proof that the holding over is in some other character or for some other purpose; but proof of a contrary intention on the part of the tenant alone is not sufficient for this purpose."

This rule is in full accord with the former holdings of this court. *Schneider* v. *Lord,* 62 Mich. 141; *Huntington* v. *Parkhurst,* 87 Mich. 38; *Scott* v. *Beecher,* 91 Mich. 590; *Hoffman* v. *Willits,* 194 Mich. 276. The opinion in *Barlum* v. *Berger,* 125 Mich. 504, is said to be in conflict. In that case there was a verbal lease for five years, the tenant to pay $15 per month rental, and also the sum of $150 in advance as additional rental for the five years. A few days after the lease expired the lessor served a notice to quit and soon after began a summary proceeding to recover possession. This was discontinued on lessee's promise to vacate. As stated in the opinion, the court found "that there was no intention on the part of the plaintiffs to permit the defendant to continue to occupy" and that "defendant did not suppose there was any such intention." On these facts the plaintiff was entitled to recover. The court, however, said:

"The rent was payable monthly, and the contract of leasing cannot be treated, after the expiration of five years, in any other manner than as a tenancy or lease from month to month."

We cannot assume that the court in the language employed intended to overrule the cases theretofore

decided, which are cited above.  In *Scott* v. *Beecher*, *supra*, the court had said:

"When a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year; but the landlord may treat him as a trespasser, or as a tenant holding upon the terms of the original lease.  *  *  *

"The law presumes an intention by the tenant to continue the yearly tenancy from the holding over. An agreement that such holding over should not be so regarded might be shown to rebut the presumption, or there might be such clear indications of an intention to vacate that a holding over for a day would not support the presumption.  But, in the absence of such agreement or such indications, the holding over is a legal expression of the tenant's intention, and all that is necessary to complete the contract is the consent or acquiescence of the landlord."

This opinion is exhaustive and well considered, and many cases are cited therein.  It may also be noted that a part of the above quotation is quoted approvingly by Mr. Justice MOORE in the somewhat recent case of *Hoffman* v. *Willits, supra.*

The case was tried before the judge without a jury and findings made and filed by him.  The third finding of fact reads:

"I further find that after the expiration of the lease, and until July 14, 1919, the defendant held over the premises and paid rent under the terms of the lease, to Emil Reick, until July 14, 1919, with the intent of the parties to continue under the terms of the lease from month to month."

Agreeable to this finding of fact, he found as a matter of law that the holding over "created a tenancy at will, from month to month, and that 30 days' notice was sufficient to terminate the tenancy."  Defendant filed exceptions to these findings and insists that the latter part of the finding of fact is not supported by

any proof submitted. The facts were all stipulated, and we find no statement therein indicating what the intent of the parties, or either of them, was when the holding over began. Counsel for plaintiffs claim that these findings were justified by the fact that the rent provided for in the lease was secured by a chattel mortgage, the lien of which is claimed to have ceased to exist at the expiration of the lease and that the holding over, as stated by plaintiffs' counsel—

"must have been with the intention of the landlord to allow the tenant to remain from month to month, not under the terms of the original lease, but at will of the landlord, with the same monthly rental so long as mutually agreeable, but without security,"—

and by the further fact that the presumption of intention to remain, applicable to farm leases or residence property, does not arise where a building is rented for business purposes.

We are not impressed that these considerations can be treated as sufficient to overcome the legal presumption arising from the holding over by the tenant and the acceptance of rent as provided for in the lease by the landlord. The language before quoted from *Scott v. Beecher, supra,* is suggestive that there must be some evidence of an agreement or at least an understanding that the holding over was not with the intention to continue the tenancy or some overt act or word indicating an intention to vacate. Even if the provision for security for the rent in the nature of a chattel mortgage be terminated by the expiration of the lease, a question we do not feel called upon to decide, the rights of the parties do not depend upon a renewal of the lease. Under the rule of law before stated, a presumption arises from the holding over by the tenant and acceptance of rent by the landlord, in a case of a lease for a term of years, that the parties intend to renew the tenancy for a period of one year. There

is no implication that the lease itself as a binding contract is to be continued in force. Its provisions may be inquired into to determine the terms under which the tenant holds and the nature of his tenancy. In an action to recover the rent, the liability would not be predicated upon the agreement of the tenant to pay as embodied in the lease, but upon the implied contract to pay according to the terms of the lease.

Neither do we think the fact that the premises leased were occupied as a barber shop raises any legal presumption affecting the tenancy. While there is authority supporting the claim that "the character of the property and the use to which the same is put, as well as the periods at which the rent is to be paid" may be taken into consideration (*Withnell* v. *Petzold,* 17 Mo. App. 669), we are not impressed that, when applied to the tenancy here created, such considerations so rebut and overcome the presumptions attendant upon the holding over and the acceptance of rent as to justify the findings made.

We feel constrained to reverse the judgment for restitution rendered by the trial court and dismiss the complaint, with costs to defendant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.