LONGYEAR *v.* JENNINGS.

1. LANDLORD AND TENANT—HOLDING OVER—IMPLIED CONTRACT TO PAY RENT.

> Although a lease for two years gave the tenant the right of renewal for three years at such rent as could be agreed upon, where no such agreement was made and the assignee of the lease held over after the expiration of the term, with the landlord's acquiescence, there was an implied contract to rent for another year according to the terms of the lease.

2. SAME—CONTRACTS—CONSIDERATION—VALIDITY.

> Where an agent of the landlord was seeking to terminate the tenancy for nonpayment of the rent, the surrender of possession was no such consideration as would support a promise to forego the rent then due.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT — LANDLORD AND TENANT.

> Where the authority of an agent was limited to the rental of premises and the collection of rents as they accrued, his agreement to forego rents already due in consideration of the surrender of the premises by the tenant would not be binding on his principal.

Error to Ingham; Collingwood (Charles B.), J. Submitted January 4, 1923.   (Docket No. 36.)   Decided April 27, 1923.

Assumpsit by John M. Longyear and others, trustees under the will of E. W. Sparrow, deceased, against James Jennings for rent.   Judgment for plaintiffs on a directed verdict.   Defendant brings error.   Affirmed.

*Jason E. Nichols,* for appellant.

*A. M. Cummins,* for appellees.

On right of tenant holding over after termination of definite term to notice to quit, see notes in 25 L. R. A. (N. S.) 855; 19 A. L. R. 1405.

On power of agent for renting or collecting rents to accept surrender of lease, see note in 37 L. R. A. (N. S.) 93.

Sharpe, J. Defendant, by writ of error, seeks review of a judgment entered on a directed verdict against him in the sum of $392.60 in favor of the plaintiffs, representatives of the E. W. Sparrow estate, for rent of certain premises in the city of Lansing. A written lease of the premises was made by Frank E. Church as agent of the estate to Dan H. Hasbrook and Hattie E. Hasbrook for two years, commencing on April 1, 1916. They conducted a restaurant therein. On December 29, 1916, the Hasbrooks assigned their interest in the lease, with the written consent of Church, to the defendant. At the same time they sold to defendant the furniture and equipment of the restaurant, taking a chattel mortgage thereon for a part of the unpaid purchase price. In September, 1917, the agency of the estate was transferred from Mr. Church to O. A. Jenison. Defendant conducted a restaurant in the premises and paid the rent until November, 1917, when he was drafted into the military service. Before leaving, he entered into a written agreement with Mrs. Riker, under which she was to occupy the premises. This agreement was drawn by Mr. Church, whose agency of the estate had theretofore terminated. Two copies were made. Neither copy was produced in court. An objection to parol evidence of its contents was sustained. The defendant, however, was permitted to testify:

"Mrs. Riker was in full charge of the place, and run it until I got back. I simply turned over the whole business entirely to her. Mrs. Riker was to run the place. She took charge of the place just as I did when I bought it from Mr. Hasbrook, exactly the same."

Whatever its nature, it is apparent that it did not assume to transfer the lease to her. Defendant testified that he kept the lease and had it in his possession

when he returned to Lansing in September, 1918. The restaurant was then closed. The rent had been paid up to April 1, 1918. Possession of the premises had not been surrendered. After an interview with Mrs. Riker, he went to see Mr. Jenison. Summary proceedings against defendant were commenced to obtain possession of the premises. He testified that Jenison afterwards said to him:

"If I fix it up with Mr. Hasbrook to let him have the fixtures back let him give the key to Mr. Jenison, he will let him go with the rentals which was due him. * * * At that time Mr. Jenison told me he would not exact any rent for any of the past occupancy of the building."

A written agreement was entered into, providing that the Hasbrooks might store the mortgaged property in a part of the leased premises until January 1, 1919, free of rent. The key was turned over, by whom it does not appear, to Jenison. Plaintiffs' judgment was for the unpaid rent from April 1st to September 15, 1918. The lease contained a provision:

"Provided second parties may have the right to renew this lease for three additional years at such rent as can at that time be agreed upon."

No such agreement was made. Defendant's counsel insists that plaintiffs, having offered no proof as to the rental value of the premises, were not entitled to recover. No assignment of the lease, assented to by the estate, and no surrender of possession of the premises having been made, and the landlord having acquiesced in the tenant's remaining in possession, the defendant was in law a tenant holding over upon an implied contract to pay rent for another year according to the terms of the lease. *Faraci* v. *Fassulo*, 212 Mich. 216; *Rice* v. *Atkinson, Deacon, Elliott Co.*, 215 Mich. 371 (19 A. L. R. 1399).

In *Rice* v. *Atkinson, Deacon, Elliott Co., supra,* relied on by defendant, this rule is adhered to. In that case a tenant had held over after the time for which the premises were leased to him had expired. The question presented was whether a notice to quit at the end of the year was necessary. In the majority opinion it was said:

"Where there is no express agreement for a renewal of an annual lease and the tenant remains in possession after the term has expired the landlord may treat him as a trespasser or may acquiesce in his continuing in possession and in the latter event the law presumes that the tenant holds for another year subject to the terms of the previous lease."

Error is alleged upon the failure of the court to submit to the jury the claim of defendant that Mr. Jenison agreed to forego the rent unpaid at the time possession was restored to the estate. The only authority Mr. Jenison then had as agent of the estate was to collect the rentals as they fell due and to re-rent the premises. The only consideration claimed for such a promise on his part was the delivery of the key to him. This defendant was under legal obligation to do in order to relieve himself from further liability to pay the rent. Defendant's purpose in seeing Mr. Jenison was to secure a termination of his liability under the lease. He could have had no other purpose in mind. If relieved of his obligation to pay rent by his agreement with Mrs. Riker, he would have had no occasion to visit Mr. Jenison. The estate was not seeking to terminate the tenancy for any reason other than the nonpayment of the rent. The surrender of possession was no such consideration as would support a promise to forego the rent then due. *Davis* v. *Rider,* 5 Mich. 423.

We are also impressed that had any such agreement been made by Mr. Jenison it would not be binding on

the estate. Jenison's authority as agent was limited to the rental of the premises and the collection of the rents as they accrued.

The judgment is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, BIRD, MOORE, and STEERE, JJ., concurred. CLARK, J., did not sit.