BAY COUNTY *v.* NORTHEASTERN MICHIGAN FAIR ASS'N.

1. LANDLORD AND TENANT—HOLDING OVER—RENEWAL.
    A holding over by a tenant after expiration of a written lease
    with a looking forward by such tenant to the execution of a
    new lease which was never made does not constitute a renewal.

2. SAME—HOLDING OVER—TENANCY FROM YEAR TO YEAR.
    It may be inferred that a lessee for a period of years who holds
    over after the expiration of his lease continues as a lessee
    from year to year.

3. SAME—TENANCY FROM YEAR TO YEAR—PRESUMPTIONS.
    A tenancy from year to year cannot be inferred from the mere
    fact of holding over by the tenant as the landlord must in
    some manner recognize the tenancy and presumption of law
    that a tenant who by permission of the landlord holds over
    is a tenant from year to year may be rebutted by proof that
    the holding over is in some other character or for some other
    purpose.

4. SAME—TENANCY FROM YEAR TO YEAR—PRESUMED TERMS—CON-
    DITIONS PERFORMABLE ONLY DURING FIRST TERM.
    When a tenant for years holds over, the law implies a contract
    on his part to renew the tenancy on the same terms for an-
    other year except as to conditions performable only during the
    first term.

5. SAME—FIRE INSURANCE—HOLDING OVER—GRANDSTAND.
    Under evidence showing 10-year lease from county whereby a
    fair association agreed to build a grandstand which would
    become property of the county at the end of the lease and
    after expiration of the lease the county continued to carry fire
    insurance policies on the grandstand in the name of the
    county, the fair association, and trustee for bondholders as
    their interests might appear, county became sole owner of
    the grandstand at expiration of lease and entitled to entire
    proceeds of settlement with insurers for fire thereafter oc-
    curring, notwithstanding fair association had continued to
    have its caretaker in charge of the premises while parties
    negotiated for, but failed to execute, a new lease for eight

Compromise of doubtful claims as consideration, see 1 Restatement,
Contracts, § 76.

years, since there was not a holding over by the fair associa-
tion of a character to continue the tenancy.

6. COMPROMISE AND SETTLEMENT — CONSIDERATION — EXPIRATION OF
LEASE.
    Upon expiration of lease by county to fair association which
    provided that latter was to erect a grandstand which was
    to become the property of the county at expiration of the
    lease and county carried fire insurance thereon payable to
    the county, fair association, and trustee for bondholders as
    the interests of the various parties might appear, there was no
    compromisable controversy which could be submitted to the
    board of supervisors involving a claim by the association and
    trustee to the fire insurance funds for fire loss occurring after
    expiration of the lease and before the parties had executed a
    new lease then in contemplation; hence, there was no con-
    sideration for county's agreement to divide the proceeds as
    the property was solely that of the county.

7. SAME—DOUBTFUL CLAIM AS CONSIDERATION.
    In order that a claim may be rightfully said to be doubtful,
    so that it may constitute consideration for a compromise agree-
    ment, there must be some reasonable ground for saying that it
    was legitimate.

Appeal from Bay; Hartrick (George B.), J., pre-
siding. Submitted January 10, 1941. (Docket No.
67, Calendar No. 41,344.) Decided March 11, 1941.
Rehearing denied May 21, 1941.

Bill by Bay County against Northeastern Mich-
igan Fair Association, a corporation, Arthur J.
Rechlin, chairman of the Grandstand Bondholders
Committee, and Peoples Commercial & Savings
Bank, trustee, to determine rights to the proceeds of
fire insurance. Decree for plaintiff. Defendants ap-
peal. Affirmed.

*Karl K. Leibrand,* Prosecuting Attorney, and *Lyle
M. McCormick* and *F. Norman Higgs,* Assistant
Prosecuting Attorneys, for plaintiff.

*A. H. McMillan* and *A. W. Black,* for defendants.

McALLISTER, J.   The county of Bay filed its bill of complaint for an adjudication and determination of rights to the proceeds of fire insurance payable as the result of the destruction by fire of a grandstand erected on fairgrounds owned by plaintiff. Defendants are the Northeastern Michigan Fair Association, which raised the money to build the grandstand by means of a bond issue, the chairman of the bondholders' committee, and the Peoples Commercial & Savings Bank, trustee under the bond issue. Plaintiff was awarded a decree, in which it was held entitled to the proceeds of the insurance policies; and defendants appeal.

The grandstand in question was built by the Northeastern Michigan Fair Association on real estate belonging to the county of Bay, and under the terms of a certain agreement whereby it was stipulated that the county would lease the land, upon which the grandstand was erected, to the association for a period of 10 years from and after May 1, 1924; that at the expiration of the lease, the grandstand would be the property of the county; that the county would, during the continuance of the lease, keep the premises insured and, in case of loss, replace the said structure immediately. No rentals were reserved to the county. The bonds were to be paid by funds raised by 25 per cent. of the gross admittance exhibition revenue. Depleted revenues forced discontinuance of the fair in 1931, three years before the expiration of the lease period; and the secretary of State, in accordance with Act No. 84, part 5, chap. 2, § 7a, Pub. Acts 1921, as amended by Act No. 267, Pub. Acts 1929*, marked the records as showing the fair association out of existence as of September 1, 1931, for failure to file an annual report. Subse-

_____

* These acts were repealed by Act No. 327, Pub. Acts 1931, effective Sept. 18 (Stat. Ann. § 21.192). The section above referred to was 2 Comp. Laws 1929, § 10131.—REPORTER.

quent to the 10-year period of the lease, the fire insurance policies were carried, as previously, in the name of the county of Bay, the Northeastern Michigan Fair Association, and the Peoples Commercial & Savings Bank of Bay City, as their interests might appear. The destruction of the grandstand by fire occurred June 4, 1935, and the loss was adjusted at the sum of $20,258.14.

After the fire defendants made claim to the insurance, and there was some delay in securing payment of the proceeds from the insurance companies. It was agreed, however, between the various parties that the loss be adjusted in the sum of $20,258.14, and thereafter this amount was paid over by the insurance companies to the county treasurer. The checks to the county treasurer were made payable to the county of Bay, the fair association, and the bank, in accordance with a certain escrow agreement reciting that the various parties to this suit were interested in the proceeds and had consented that the county treasurer act as custodian until agreement regarding the disposition of the funds had been entered into by the said parties. This transaction was reported to the board of supervisors by a combined committee, consisting of the agricultural committee and the board of auditors of the county, which had been designated by the board of supervisors to carry out such agreements. Thereafter a resolution was adopted by which the county treasurer was instructed to indorse the checks received from the insurance company and to pay therefrom certain expenses resulting from the fire, and thereafter to retain for the county the sum of $3,700, and to pay to the bondholders the sum of $15,950.40. It was provided in such resolution that a balance of $15,950.40 be paid over by the county treasurer to the bank for the use and benefit of the bondholders of said grandstand bonds. After numerous conferences and pro-

posed agreements, it was finally determined that the county treasurer should deposit all of the checks from the insurance company with the bank and issue checks on such bank deposit to the various parties in order to carry out the agreement. On the understanding that they were to receive the proceeds, in accordance with the proposal theretofore agreed to, the representatives of all of the parties indorsed the checks, so that the county treasurer could deposit them to his account in the bank. After the checks had been indorsed by the various parties and deposited in the bank, the county treasurer delayed issuing the checks to the parties in accordance with the understanding entered into when these parties had indorsed the checks. One of the representatives then had a conference with the county clerk, who advised him that he would not indorse, issue, or sign any checks requested by the county treasurer to carry out the transaction, because of advice of the prosecuting attorney. When this situation was called to their attention, the board of supervisors adopted a resolution requiring the county clerk to appear before it and explain the reason for not issuing the check to the bondholders. The result was that the county clerk appeared before the board and stated that his refusal was due to advice from the prosecuting attorney; and thereafter the prosecuting attorney appeared before the board and stated that before any disposition of the funds should be made, an order should be obtained from the circuit court. Thereupon the board adopted a resolution reciting that, because there was a legal question involved, the matter should be submitted to the circuit court for determination; and on February 8, 1936, the county filed its bill of complaint for an adjudication of the question of who was entitled to the funds.

It is the claim of the county that it was the sole

and unconditional owner of the grandstand at the time of its destruction by fire, and that none of the other parties had any interest in the premises at that time and that they were not entitled to share in any proceeds of the fire insurance. It is contended that after the expiration of the 10-year period of the lease on May 1, 1934, the grandstand became the sole property of the county; that on said date the lease expired and the rights of the fair association and the bondholders to any interest in the grandstand expired with the expiration of the lease.

On behalf of defendants, it is claimed that, at the time the board of supervisors of the county of Bay agreed upon the disposition of the fire insurance funds, a compromisable controversy existed; that although the lease, by its terms, expired at the end of the 10-year period therein stipulated, there was a holding over and a continuation of the said lease from year to year; and that the county of Bay is bound by the agreement of settlement entered into with regard to the disposition of the funds. If there was no holding over at the expiration of the 10-year period, there was no compromisable controversy existing at the time of the agreement which was entered into between the county of Bay and defendants.

To substantiate the claim that there was a holding over of the 10-year period in the lease, defendants contended that at the expiration of the above period, the caretaker employed by the fair association remained in charge of the premises; that the association continued to pay for his telephone on the fairgrounds up through the month of May, 1935, the telephone rental for June not being yet due at the time of the fire. It appears further that at the expiration of the said period in the lease, there was a discussion of a further lease for a period of eight years; that such a lease was recommended by the agricul-

tural committee of the board of supervisors to the board in a report which pointed out that there were then three parties interested in the proposition, namely, the fair association which was to be the lessee, the bondholders who hold the bonds issued to build the grandstand, and the county, "to which the grandstand is to revert at the expiration of the lease." Apparently such a lease was prepared by the prosecuting attorney, embodying provisions for the cost of the caretaker which was to be jointly shared in the future between the association and the county. The lease, however, was never executed between the parties.

We are of the opinion that there was no holding over on the part of defendants after the expiration of the 10-year period stipulated in the lease. The most that could be concluded from the proofs is that defendant fair association was looking forward to the execution of a new lease, and that the parties never got together to make it. A holding over under such circumstances is not a renewal.

Where a party holds over after a lease for a period of years, it may be inferred that he continues as lessee from year to year.

"It is held, however, that a tenancy from year to year cannot be inferred from the mere fact of holding over by the tenant; the landlord must in some manner recognize the tenancy. * * * The presumption of law that a tenant who by permission of his landlord holds over is a tenant from year to year may be rebutted by proof that the holding over is in some other character or for some other purpose." *Faraci* v. *Fassulo,* 212 Mich. 216, 218.

When a tenant under a lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year. *Scott* v. *Beecher,* 91 Mich. 590. Where a tenant holds over, the law implies a continuance of the tenancy on the

same terms and subject to the same conditions. See
*Hoffman* v. *Willits,* 194 Mich. 276. This rule does
not, however, apply as to conditions which can be
performed only during the first term. 35 C. J. p.
1029.

In *Ives* v. *Williams,* 50 Mich. 100, 106, 107, this
court said:

"Whether in case a party holds over after the
expiration of an express tenancy for years he be-
comes a tenant by sufferance merely, or a tenant sub-
ject to the provisions of the express lease, or a ten-
ant upon still other terms, is not necessarily a pure
question of law. It is generally rather a question of
evidence and depending upon states of fact which
are more or less despotic in their tendency. * * *

"But when the case is of such a nature *that the
facts plainly revolt against material provisions of
the old lease;* or when according to the evidence
there is not only no right to infer the assent of the
parties, but positive proof that the landlord unquali-
fiedly dissents, there is no authority for holding that
the parties are nevertheless subject as matter of law
to the old provisions. * * *

"The contrary view would lead to great absurdity
and would enable a tenant by an easy process to dic-
tate terms to his landlord. Now in the case before
us the state of the property had undergone very
substantial change and many important provisions
of the lease had become inappropriate, and the de-
fendant, the lessor, was opposed to the further con-
tinuance of the tenancy and objected to its being
forced upon him. The plaintiff, the tenant, resolved
to hold on. But he could not do so and still bind the
defendant to the old and inapplicable provisions."

In this case the terms of the first lease provided
that the fair association should build a grandstand
that would become the property of the county at the
expiration of the 10-year lease. The association did
not contract to pay the county any rentals. 'If the

law only implies the continuance of a lease from year to year *on the same terms,* on holding over after a lease for a term of years, how can it be said that the association held over on the same terms as the original lease? The grandstand was already built. To build this structure was the only covenant the association agreed to in the original lease. The association could not have held over on the same terms as the original lease, for the condition therein was performed, and could only have been performed during the period covered by such lease. It could not, thereafter, in any manner, have been performed. The terms upon which a tenancy could have been continued would, of necessity, have been other than those of the original lease. Under such circumstances the law does not imply a continuance of a tenancy. It must, therefore, be held that the lease expired at the end of the 10-year period and was not thereafter renewed. The county, under the terms of the lease, became the owner of the grandstand before the occurrence of the fire.

There was no compromisable controversy that could have been submitted to the board of supervisors involving a claim of defendants to the fire insurance funds. There was no legal basis for any claim to the insurance money on the part of defendants. In order that a claim may be rightfully said to be doubtful, there must be some reasonable ground for saying that it was legitimate. Such ground did not exist in this controversy. There was no consideration for any action on the part of the county to agree to divide the insurance funds with defendants.

Decree affirmed, with costs to plaintiff.

Sharpe, C. J., and Bushnell, Boyles, Chandler, North, Wiest, and Butzel, JJ., concurred.