### COX *v.* McGREGOR.

1. LANDLORD AND TENANT—MILITARY PERSONNEL—EVICTION—PETITION FOR AUTHORITY.

Eviction proceedings could not be commenced against a tenant in the military service without the filing of a petition for authority to commence such proceedings (CL 1948, § 32.53; 54 Stat 1178, c 888, 56 Stat 769).

2. SAME—RENEWAL—OPTION TO PURCHASE—HOLDING OVER.

Tenant under written lease for 16 months, which contained an option to purchase but no provision for renewal, which was renewed for 1 year by a written renewal agreement, held over on a month-to-month tenancy after expiration of renewal term.

3. CONTRACTS—OPTION TO PURCHASE LEASED PREMISES—DURATION OF OPTION.

Optionee under provision of lease for purchase of premises at $16,000 who was authorized to make up to $4,000 of improvements which could be deducted from $5,000 down payment but failed to exercise option within the term of the lease and came to no agreement with landlord as to value

REFERENCES FOR POINTS IN HEADNOTES
[3-8] 32 Am Jur, Landlord and Tenant, § 305.
[5, 6] 12 Am Jur, Contracts, § 27.
[7] 32 Am Jur, Landlord and Tenant, § 936.

of improvements claimed to have cost $1,100 *held*, not to have exercised the option in accordance with its terms and to have lost such right upon the expiration of the renewal term of the lease as it could not be exercised during the month-to-month holding over.

4. SAME—SOLDIERS' AND SAILORS' CIVIL RELIEF ACTS—OPTION TO PURCHASE CONTAINED IN LEASE OF REALTY.

Prohibitions in State and Federal soldiers' and sailors' civil relief acts do not apply so as to prevent termination of rights of lessee-optionee who entered military service and failed to exercise option to purchase the property within the term of the renewal lease as such a relation does not come within the terms of either statute (CL 1948, § 32.53; 54 Stat 1178, c 888, 56 Stat 769).

5. SAME—CONTINUING OFFER—ACCEPTANCE.

A continuing irrevocable offer cannot ripen into a contract until that offer has been accepted.

6. SAME—EXECUTORY UNILATERAL CONTRACT—ACCEPTANCE OF OFFER TO PURCHASE IN LEASE.

Lessee-optionee who failed to exercise option to purchase contained in his written lease of premises did not have an executory unilateral contract as claimed, where he never accepted the offer during its continuance.

7. LANDLORD AND TENANT—ACCEPTANCE OF RENT FROM TENANT HOLDING OVER—CONSIDERATION—EXTENSION OF OPTION TO PURCHASE.

Landlord's acceptance of payment of 5 months' rent from tenant holding over on a month-to-month basis without assenting to conditions imposed by tenant that lease, containing option to purchase, be renewed for another year, did not constitute a continuance of the option, where there was no consideration paid other than the rent to which the landlord was entitled by virtue of the holding over.

8. DAMAGE—EQUITY—EXTENSION OF OPTION IN LEASE—SPECIFIC PERFORMANCE.

Denial of plaintiff tenants' claim for damages in suit for extension of option to purchase under lease and specific performance of such option *held*, proper, where plaintiff was found to have lost his rights under the option.

Appeal from Washtenaw; Jacobs (Theo T.), J., presiding. Submitted January 9, 1951. (Docket No. 36, Calendar No. 44,977.) Decided April 3, 1951. Rehearing denied May 14, 1951.

Bill by John J. Cox, for and on behalf of Joseph H. Cox, an officer in the military service of the United States, against Malcolm I. McGregor and others to compel execution of contract for the sale of real estate.   Decree for plaintiff.   Defendants appeal. Reversed and bill dismissed.

*Hugh E. Wilson* and *Franklin C. Forsythe,* for plaintiff.

*Conlin, Conlin & Parker (Edward F. Conlin* and *Richard J. Mann,* of counsel), for defendants.

BUSHNELL, J.   Defendants Malcolm I. McGregor, Burwell McGregor and Alice Hagle entered into a lease of certain property in Ypsilanti with plaintiff Joseph H. Cox, son of plaintiff John J. Cox.   This lease was for a term of 16 months from September 11, 1939, at a rental of $110 per month.   The lessee was granted an exclusive option to purchase the property "at any time before January 11, 1941, for the sum of $16,000."   Cox was required to pay $5,000 "as a down payment," and the balance at 1% per month, or more, the interest at 6%, "to be deducted from the monthly payments."   The lease also contained the following provision:

"It is also understood and agreed by and between the parties to this agreement, that second party may make improvements to said property during the term of this lease, and that in the event that any improvements are made, first parties are to be consulted and they are to agree to the improvements and the parties to this agreement are to agree as to the value and cost of the improvements, and that if improvements are made, the down payment of $5,000, as above mentioned, shall be decreased by the amount or cost of the improvements that are agreed upon up to $4,000, and if said improvements are made, the down pay-

ment will be decreased by the amount or value of said improvements, and the unpaid balance on the land contract shall be increased by that amount, it being distinctly understood that the price of the property is $16,000, and that is the amount that is to be paid by second party to said first parties if said option is exercised."

On November 26, 1940, the parties executed a written renewal of the lease "for a term of 1 year from and after January 11, 1941, on the same terms and conditions as stipulated in said lease."

Although Cox had entered the military service on June 2, 1941, he continued in possession. His gasoline station on the premises was thereafter operated by his father, John J. Cox, as his representative and agent.

On February 5, 1942, Cox was notified in writing that the property had been leased to D. M. Silkworth, and that "any matter relative to your tenancy should be adjusted with the new lessee." Cox's check for the January rent was returned to him and he was instructed to forward it to Silkworth.

Counsel for Cox wrote a letter on July 31, 1942, to counsel for McGregor, from which it appears that some litigation was pending between John J. Cox and Don M. Silkworth. This letter reads as follows:

"I talked with Mr. John J. Cox yesterday, and he is agreeable to leaving the matter in status quo and will pay the rent for the months Mr. McGregor refused payment. I understand that Mr. McGregor cashed the June and July checks, and so if my figures are correct, there remains rent from January 11, 1942 to June 11, 1942, or $550.

"If you will prepare a receipt covering all rent up to the present time, in accordance with the terms of the lease and option agreement, Mr. Cox will bring in the money either Monday or Tuesday of next week.

"It is my understanding that by accepting this rent, the lease and option are renewed for a period of one year, to January 11, 1943, by operation of law; and that the litigation will be held in status quo until such year as Mr. McGregor again refuses to accept the rent, at which time the litigation can proceed; and that none of the rights of either party at the present time will be lost by reason of the settlement on this basis.

"The above outline of Mr. Burke's, Mr. Wilson's, and my views has been made so that there will be no misunderstanding as to the situation with respect to this matter."

On August 11, 1942, McGregor gave a receipt to Cox for $550 for rentals from January 11, 1942 to June 11, 1942.

Joseph H. Cox, who was a reserve officer, went overseas on November 17, 1942, and returned on May 6, 1945. He was injured in a collision between 2 vehicles during a blackout and was hospitalized for about 3 months before his return to the United States. At the time of trial in September of 1948, he was on leave from the Percy Jones General Hospital at Battle Creek, Michigan.

During Joseph's absence from the country, his father negotiated for a loan of $10,644 with the Home Owners Loan Corporation, for conversion of the residence on the premises into 5 apartments. Cox attempted to discuss the matter on August 30, 1943, with Malcolm McGregor, whom he met for this purpose at the gasoline station in Ypsilanti. According to Cox, McGregor refused to look at the plans. Cox testified:

"I told him that in order to put through this deal with the Home Owners' Loan Corporation and the Housing Corporation that we would have to have a land contract on this property and I was now exercising the option that Joe Cox had under his ar-

rangement, and asking him to give us a land contract as per the agreement entered into in August of 1939."

After this claimed exercise of the option to purchase, attempts made by Cox to adjust the matter were futile. On October 16, 1943, Cox was notified in writing by the Home Owners Loan Corporation that it could not proceed until he had converted, or would be in a position to convert, his lease into a land contract.

The record is not clear as to what transpired after August 30, 1943, regarding payments of rentals to the defendants, other than the exhibits in the record of certain checks bearing the notation "payment on land contract," some of which were cashed by McGregor without striking off the notation.

Because Joseph H. Cox was in military service, eviction proceedings could not be commenced against him without the filing of a petition for authority to commence such proceedings. Authority was obtained from a circuit court commissioner for Washtenaw county on March 14, 1947, when such proceedings were begun.

On April 22, 1947, Cox filed a bill in chancery, seeking an injunction restraining the defendants from interfering with his possession and from prosecuting actions at law against him.

In his prayer for relief, Cox asked the protection of the "soldiers' and sailors' acts of the Federal and State governments;" that his right to possession be preserved and extended, including an extension of his option to purchase; that defendants be required to specifically perform their portion of the option agreement, and deliver a land contract, together with an accounting and a determination of the damages suffered by him.

The matter was heard by the trial judge in September of 1948, but the findings of the court were

not filed until May 19, 1950. A decree was entered on June 19, 1950, in which the lease, together with the option to purchase, bearing date of September 11, 1939, was adjudged in full force and effect for a period of 90 days from the date of the decree, provided, however, that if the cause should be appealed and the decree affirmed, the 90-day period should begin to run from the date of the decree of the Supreme Court. It was further adjudged that Cox might, during such 90-day period, exercise his purchase option at the stipulated price of $16,000 by tendering to defendants' counsel the sum of $5,000. Pending final determination, Cox was ordered to pay the monthly rentals provided for in the lease. Defendants took a general appeal and plaintiff took a cross appeal on the denial of damages.

Plaintiff relies upon *Meadow Heights Country Club* v. *Hinckley,* 229 Mich 291. The Country Club had a lease for a term of 10 years, with the privilege of renewal for 5 years. The lease contained an option to purchase at a given price which was required to be exercised immediately upon the termination of the lease or during its last 3 months. The right to the renewal was exercised and notice of election to purchase was given during the renewal period. It was held that the option could be exercised during the renewal period and specifically enforced. The Court, in arriving at this conclusion, pointed out that in *Signor* v. *Keystone Consistory, A.A.S.R.,* 277 Pa 504 (121 A 320) the option ended at a fixed date and that a renewal of the lease did not carry the option beyond such fixed date.

Plaintiff also relies on *Starr* v. *Holck,* 318 Mich 452 (172 ALR 413), where it was held that, under a lease for 1 year, which provided for "an extension thereof for ........ (*sic*) years on the same terms as therein set forth," a holding over accomplished a renewal of the lease for 1 year and carried with it an

extension of the purchase option contained within the lease.

In the case before us there is no provision in the lease for a renewal, and no attempt was made to exercise the option within the original life, or its renewal. Neither the *Country Club* nor *Starr Case* supports plaintiff's argument that he could exercise his option during a holding over on a month-to-month tenancy. See *Smith* v. *Carter*, 213 Ark 937 (214 SW 2d 64) and *Andreula* v. *Slovak Gymnastic Union Sokol Assembly No. 223*, 140 NJ Eq 171 (53 A2d 191).

The written lease which expired on January 11, 1941, continued for an additional year by reason of a written renewal agreement. The rent reserved in the lease, however, was $110 per month; therefore, holding over after January 11, 1942, created a tenancy from month to month. *Marks* v. *Corliss' Estate*, 256 Mich 460.

Cox made no attempt to exercise his option during the life of the lease. Cox, the optionee, was required to pay $5,000 as a down payment. This he did not do. It was, however, further understood and agreed that he might make improvements to the property during the term of the lease, and that the parties were to agree as to the value and cost of the improvements, and "that if improvements are made, the down payment of $5,000, as above mentioned, shall be decreased by the amount or cost of the improvements that are agreed upon up to $4,000."

The parties never agreed as to the value and cost of improvements claimed to have been made by Cox to the extent of approximately $1,100. No other improvements were made, hence, it must be held that the optionee did not exercise the option in accordance with its terms.

Furthermore, the right to exercise the option ceased upon the expiration of the renewal term of the lease and it could not be exercised during the

month-to-month holding over. *Napper* v. *Rice,* 127 W Va 157 (32 SE2d 41); 163 ALR 714; and *Wright* v. *Barclay,* 151 Neb 94 (36 NW2d 645).

Plaintiff further argues that his option to purchase was "in full force and effect in the year 1943," because of the provisions of the Federal and State soldiers' and sailors' relief acts.

Defendants say that these acts do not "require that the plaintiff be given an opportunity at the present time to purchase the premises in accordance with the terms of the option." See PA 1909, No 84, § 53, as amended by PA 1937, No 239 (CL 1948, § 32.53 [Stat Ann 1949 Cum Supp § 4.644]) and soldiers' and sailors' civil relief act of 1940 (54 Stat 1178, c 888, 56 Stat 769, c 581, 50 USCA, App, § 501 *et seq.,* 147 ALR 1395 *et seq.*).

The Michigan act applies to forfeitures of existing contracts. There could be no contract to purchase until the option had been exercised in accordance with its terms. *LeBaron Homes, Inc.,* v. *Pontiac Housing Fund, Inc.,* 319 Mich 310, 315. This was not done.

The Federal act affords specific relief in certain situations. The applicable section (301)[*] applies to instalment contracts for the purchase of real or personal property. It forbids the rescission or termination of a contract upon which a deposit or instalment was paid by one who thereafter entered the military service. No payment or deposit has ever been made by Joseph H. Cox, or anyone acting in his behalf. The prohibition against rescission and termination, therefore, does not apply.

Cox claims that he had an "executory unilateral contract" at the time he entered military service. He cites in support of this *Michigan Trust Co.* v. *Herpolsheimer,* 256 Mich 589, and *Maas Brothers, Inc.,* v.

---

[*] 50 USCA, App, § 531.—Reporter.

*Weitzman,* 288 Mich 625. These cases deal with options to renew leases and not options to purchase. A continuing irrevocable offer cannot ripen into a contract until that offer has been accepted. 12 Am Jur, pp 506, 524. See, also, *Miller* v. *Kemp,* 157 Va 178 (160 SE 203, 84 ALR 980, 987); and *Fletcher* v. Peck, 6 Cranch (10 US) 87, 136 (3 L ed 162, 178). So tested, Cox did not have an "executory unilateral contract."

The trial judge permitted Cox to tender the sum of $5,000 within 90 days, and thereby exercise his option. The right so given seems to be based upon the proposition that when Cox paid past due rent of $550 on July 31, 1942, it was under the conditions of the letter dated July 31, 1942, hereinabove quoted. As we have already indicated, in response to this letter, McGregor did not assent to its conditions, but merely issued a receipt for $550, covering rent from January 11, 1942 to June 11, 1942.

We do not agree with the trial judge that the acceptance of this money constituted a contract to extend the option. Defendants were entitled to their rent and received no other consideration. The trial judge specifically stated in his findings that negotiations between the parties "did not create a contract, but that defendants by stating they would not accept $16,000, and desired a greater sum, to wit: $40,000, sustained plaintiff's option, and that plaintiff's option is still in force and effect."

The trial judge denied plaintiff's claim of damages. In this we agree, but we do not agree that the option and lease continued in force and effect.

The decree is vacated and one may be entered here dismissing plaintiff's bill of complaint, with costs to appellants.

Reid, C. J., and Boyles, North, Dethmers, Butzel, Carr, and Sharpe, JJ., concurred.