## GLOCKSINE *v.* MALLECK.

1. LANDLORD AND TENANT—LEASE FOR DEFINITE TERM—TIME FOR EXERCISE OF OPTION TO PURCHASE.

   Options to purchase premises, leased for a definite term, are inferred to have been intended to be exercised during the term of the lease, where the lease does not explicitly set forth the date upon which the options were to expire, especially where it is specifically provided in the lease that the lease shall terminate upon the exercise of either of the options.

2. SAME—OPTION TO PURCHASE—TERMINATION OF LEASE.

   The exercise of a purchase option by a tenant during the term of his lease automatically terminates the lease.

3. SAME—OPTION TO PURCHASE.

   An option to purchase premises, leased for a definite term, is construed as an option for a term of limited duration, where there is no specific period stated for the exercise of the option.

4. SAME—CONSTRUCTION OF LEASE—INTENT.

   Generally, ambiguous provisions of a lease are construed against the lessor, but a general presumption favoring lessees cannot outweigh the evidence of the parties' intention as set forth by the language of the lease.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 6] 32 Am Jur, Landlord and Tenant § 305.
[2] 32 Am Jur, Landlord and Tenant § 300.
[4] 32 Am Jur, Landlord and Tenant § 128.
[5, 7, 9] 32 Am Jur, Landlord and Tenant §§ 935–949.
[6] 32 Am Jur, Landlord and Tenant § 308.
[8, 11] 32 Am Jur, Landlord and Tenant § 308.
Renewal or extension of lease as extending time for exercise of option to purchase contained therein. 163 ALR 711.
[10] 32 Am Jur, Landlord and Tenant § 935.

5. Same—Terms of Holdover Tenancy.

The terms of a holdover tenancy are not necessarily the same as those of the lease, but the terms of the original tenancy may be inquired into to determine the terms of the holdover tenancy.

6. Same—Option to Purchase—Holdover Tenancy.

The right to exercise an option to purchase at a fixed price, contained in a lease for a definite term, expires at the end of the lease term absent agreement of the parties to the contrary, and cannot be exercised during the holdover tenancy.

7. Same—Terms of Holdover Tenancy.

A holdover tenancy is upon the terms of the original lease so far as they are applicable to the new relation, and such terms do not include those which can be performed only during the original term.

8. Same—Holdover Tenancy—Option to Purchase.

An option contained in a lease to purchase the property and so destroy the tenancy is not 1 of the terms of the tenancy incorporated into the tenancy created by tenant holding over after the expiration of the lease.

9. Same—Holdover Tenancy.

The continued possession by a tenant after the expiration of the term of the lease not containing a renewal clause, coupled with the payment of rent, does not *renew* the old lease but creates a *new* tenancy, a holdover tenancy being a relation created by operation of law.

10. Same—Holdover Tenancy.

The incidents of a holdover tenancy must be implied by law.

11. Same—Holdover Tenancy—Option to Purchase.

An agreement in a written lease, giving the lessee the first option to purchase the leased premises and the right to meet any offer, and, in the event of the death of the lessor, the right to purchase the premises at a fixed sum, and further providing that the lease should terminate upon the exercise of either of such options, is not a term of a holdover tenancy, where the lease contained no option to renew.

Appeal from Bay; Smith (Richard G.), J. Submitted October 10, 1963. (Calendar No. 24, Docket No. 49,741.) Decided December 27, 1963.

Bill by Paul R. Glocksine and Irma G. Glocksine against Martha Malleck and the Peoples National Bank & Trust Company, coadministrators of the estate of Gertrude Leix, deceased, for specific performance of option to purchase leased property. Decree for plaintiffs. Defendants appeal. Reversed.

*Lyle M. McCormick,* for plaintiffs.

*John M. Patterson,* for defendants.

SOURIS, J.   Plaintiffs leased a gasoline station from Gertrude Leix for a term of 5 years, beginning on April 1, 1953.  The lease contained the following provisions pertinent to this appeal:

"It is agreed that if first party desires to sell the property at any time that second parties, or either of them, shall have the first option to purchase the same and the right to meet any offer.

"It is further agreed that in the event of the death of the first party, second parties may purchase the property from the estate of first party for the sum of $5,000 cash.  In the event of a purchase by second parties under either one of the above options the lease shall terminate."

On October 1, 1957, defendant Malleck was appointed special guardian of lessor, who had been declared mentally incompetent.  Upon expiration of the lease on April 1, 1958, the Glocksines remained in possession of the premises and continued to pay to the lessor's estate the monthly payments prescribed in the lease.  The lessor died in March, 1959, and in September, 1959, Paul Glocksine informed defendant Malleck (who had been appointed coadministrator of the deceased lessor's estate) by letter that the plaintiffs were exercising their option to buy the leased premises from the lessor's estate for $5,000.

Upon the defendants' refusal to sell, plaintiffs sought relief in equity. Defendants appeal from the chancellor's decree that they convey the property to plaintiffs in consideration of plaintiffs' payment to the estate of $5,000.

In the court below plaintiffs argued successfully that at the expiration of the lease's term they became, by holding over, tenants from year to year, subject to all of the provisions of the expired lease, and that as such they retained the right to exercise the options contained in the lease, which options, they maintained, had no specific expiration dates. It is true that the lease does not explicitly set forth the month, day, and year upon which the options were to expire. Since, however, the options were included in a lease for a definite term, it is reasonable to infer that it was the intent of the parties that the options had to be exercised during the term of the lease. *Durepo* v. *May* (1947), 73 RI 71, 75 (54 A2d 15, 18, 172 ALR 429). Such an inference is also supported by language in the lease providing for its termination in the event of purchase by the plaintiffs under either one of the options. This suggests that it was the understanding of the parties that the options were to be exercised, if at all, during the term of the lease. If it be said that such language does not indicate the date by which the option had to be exercised, but rather means only that exercise of either option during the term of the lease terminated the lease, the language would be superfluous, since the exercise of a purchase option by a tenant during the term of his lease automatically terminates the lease. *Rosenthal* v. *Shapiro*, 333 Mich 302, 315.

Moreover, a finding that the option was established for an indefinite period contradicts inherent probabilities, for an option to purchase is of such a nature that it is nearly always intended to be of limited duration. See 1A Corbin, Contracts, § 273. The like-

lihood of this being true is especially pronounced in the instant case, where there is a fixed price to provide for the contingency of the lessor's death. That a lessor would bind himself to a tenant indefinitely by such an agreement, beyond the normal term of his lease, thereby depriving his estate of any potential increase in property values, is unlikely.

We are not unmindful of cases like *Starr* v. *Holck,* 318 Mich 452 (172 ALR 413), which hold that ambiguous provisions in a lease should be construed against the lessor. Such cases, however, generally justify the result they reach as being "consistent with the actual intention of the parties". *Starr* v. *Holck,* at p 462. A general presumption favoring lessees cannot outweigh the evidence of the parties' intention as set forth by the language of the lease.

We hold, therefore, that the parties to the lease indicated with sufficient clarity that they intended the option to expire at the end of the lease term. The question then becomes whether the option could be exercised by the plaintiffs as tenants holding over. In *Scott* v. *Beecher,* 91 Mich 590, defendant leased a store from plaintiff for 1 year. At the end of the year defendant continued to occupy the premises and to pay rent. However, before another year had elapsed defendant vacated the premises and plaintiff sued for the rent he had lost during the period between defendant's departure and the entry of a new tenant. In affirming a judgment for plaintiff the Court said (p 592):

"It is well settled that  *  *  *  when a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year; but the landlord may treat him as a trespasser, or as a tenant holding upon the terms of the original lease."

This language, unqualified, is certainly broad enough to justify the Glocksines' contention that since the option is a term of the lease, it may be exercised during a holdover tenancy.

However, in *Faraci* v. *Fassulo,* 212 Mich 216, defendants who were holdover tenants appealed from a judgment ordering them to surrender the premises before the end of the holdover year. In its opinion reversing the circuit court's judgment, this Court analyzed a number of cases, including *Scott* v. *Beecher, supra,* and concluded (pp 221, 222):

"A presumption arises from the holding over by the tenant and acceptance of rent by the landlord, in a case of a lease for a term of years, that the parties intend to renew the tenancy for a period of 1 year. There is no implication that the lease itself as a binding contract is to be continued in force. Its provisions may be inquired into to determine the terms under which the tenant holds and the nature of his tenancy. In an action to recover the rent, the liability would not be predicated upon the agreement of the tenant to pay as embodied in the lease, but upon the implied contract to pay according to the terms of the lease."

See, also, *Longyear* v. *Jennings,* 222 Mich 647, 649. Thus the law in this State is not that the terms on which a holdover tenant holds are necessarily the same as those of the lease, but rather that the terms of the original tenancy may be inquired into to determine the terms of the holdover tenancy.[1] The most obvious illustration of the fact that all terms of the lease are not necessarily applicable to the

---

[1] Some of the later cases which cite *Faraci* have not spoken as precisely as did *Faraci,* but have stated generally that when a tenant holds over "the law implies a contract to renew the tenancy on the same terms for another year." *E. g., Kokalis* v. *Whitehurst,* 334 Mich 477, 480 (45 ALR2d 823). However, such cases have not involved options to purchase and they have recognized the continuing vitality of *Faraci.*

holdover tenancy is that, although the lease may provide for a term of several years, each holdover tenancy is for only 1 year. The lease in *Faraci,* for example, was for 2 years, but the holdover tenancy was for 1 year.[2]

Our Court in its opinions has distinguished between the nature and terms of a renewal tenancy and those of a holdover tenancy. When a lease contains an option to purchase during its term and an option to renew the lease "on the same terms", a renewal of the lease carries with it the right to exercise the purchase option during the renewed term. *Meadow Heights Country Club* v. *Hinckley,* 229 Mich 291. However, an option to purchase which expires at the end of a lease term, or at the end of a renewal thereof, cannot be exercised during the holdover tenancy. *Cox* v. *McGregor,* 330 Mich 260, 267, 268 (24 ALR2d 1067):

> "The right to exercise the option ceased upon the expiration of the renewal term of the lease and it could not be exercised during the month-to-month holding over. *Napper* v. *Rice,* 127 W Va 157 (32 SE2d 41); 163 ALR 714; and *Wright* v. *Barclay,* 151 Neb 94 (36 NW2d 645)."

*Cox,* like the instant case, involved an option to purchase at a fixed price. The holdover tenancy was from month to month, rather than from year to year as plaintiffs here claim, but since the conditions

---

[2] For further support of the proposition that terms of a holdover tenancy are not necessarily the same as those of a preceding lease, see *Rice* v. *Atkinson, Deacon, Elliott Co.,* 215 Mich 371 (19 ALR 1399), where this Court said that a holdover tenancy is upon "the terms of the previous lease", p 372, but also cited approvingly a New York case's statement that a holdover tenancy is "'upon the terms of the original lease so far as they are applicable to the new relation'", p 376; and *Bay County* v. *Northeastern Michigan Fair Association,* 296 Mich 634, 641, which, while announcing the principle that a holdover tenancy is on the same terms as the lease, noted that "This rule does not, however, apply as to conditions which can be performed only during the first term."

of all such holdover tenancies are determined from the terms of the expired lease, our conclusion in *Cox* relating to the expiration of the option upon commencement of the holdover tenancy is equally applicable in this case of Glocksine. See, generally, Burby, Real Property, § 117 (2d ed, 1954).

*Napper* v. *Rice,* the West Virginia case relied upon in *Cox,* involved a 2-year lease containing an option to purchase within the lease term for a fixed price. In denying specific performance of the purchase option to a tenant holding over, the West Virginia supreme court of appeals said (p 166):

"Nor was the option to purchase extended by the holding over by the plaintiff after the expiration of the term of the lease. This option, while contained in a written lease, was no part of the lease proper, and was expressly limited to 'the said period of 2 years from date, hereof', and the lease contained no provision for its extension or renewal. The lessee, therefore, could not extend this period by the mere holding over and paying rent." 32 SE2d 41, 46.

In *Wright* v. *Barclay,* the Nebraska case relied upon in *Cox,* the tenant under a 1-year lease containing an option to purchase if the lessor wished to sell during the term was likewise denied the right to exercise the option while holding over (pp 98, 99):

"We think an option contained in a lease to purchase the property and so destroy the tenancy is not 1 of the terms of the tenancy itself. While it may be made a provision of a lease and incorporated therein it is, nevertheless, a provision outside of the terms which regulate the relations between the parties as landlord and tenant. It is therefore not 1 of the terms of the original tenancy which will be incorporated into the tenancy created by a tenant holding over after the expiration of the lease. * * *

"If the parties to a lease desire that an option contained therein should extend beyond the term

thereof, to a tenant holding over, they can easily use apt language to express that purpose but the law should not, by implication, enlarge the legal rights of a tenant holding over beyond the terms and conditions necessary to continue the landlord-tenant relationship." 36 NW2d 645, 648.

The *Cox* decision and the cases cited therein do not, of course, invalidate the statement in *Meadow Heights Country Club* v. *Hinckley,* 229 Mich 291, 294, that an option to purchase during the term of a lease is "quite intimately connected with the contract", for that statement was made while discussing the legal effect of exercise of an option to renew a lease on the same terms upon a purchase option contained in the lease. *Cox* does, however, at least stand for the proposition that an option to purchase during the term of a lease is not 1 of the provisions of the lease which will automatically accompany a holdover tenancy.

The supreme court of Illinois has had occasion to decide a case very similar to Glocksine. In *Wanous* v. *Balaco* (1952), 412 Ill 545 (107 NE2d 791), there was a lease for 4 years and 9 months containing an option to purchase at any time during the term of the lease at a fixed price. The tenant held over and during his second yearly holdover tenancy, when the lessor asked him to vacate the premises, he asserted the right to exercise the purchase option. The court said (pp 547–549):

"Plaintiff relies heavily upon *Hindu Incense Manfg. Co.* v. *MacKenzie,* 403 Ill 390 (86 NE2d 214), claiming it to be decisive of the present case. In that case, the lease contained an option to purchase and an option to renew upon the same terms and conditions. The option to renew was properly exercised by the tenant and it was held that when the lease was renewed, all the provisions thereof, including the purchase option, were renewed. This

court there held that an option to purchase was an integral part of the lease and not an independent covenant. We cannot agree that the *Hindu Incense Case* is decisive here. In the case at bar there was no agreement or covenant for renewal. The continued possession coupled with the payment of rent did not *renew* the old lease, but created a *new* tenancy from year to year upon the same terms as the old lease, only so far as they are applicable to the new condition of things. *Weber* v. *Powers,* 213 Ill 370 (72 NE 1070, 68 LRA 610).

"Defendants, to sustain the decree below, cite cases from other jurisdictions which hold that a purchase option cannot be exercised by a holdover tenant. In those cases, however, it was held that an option to purchase is an independent covenant and for that reason does not become 1 of the terms of the holdover tenancy. *Andreula* v. *Slovak Gymnastic Union,* 140 NJ Eq 171 (53 A2d 191); *Spaulding* v. *Yovino-Young,* 30 Cal 2d 138 (180 P2d 691); *Libin* v. *Peters,* 118 Ind App 27 (75 NE2d 162). Since we have held that an option to purchase is not an independent covenant, these cases are not of persuasive effect.

"We believe, however, that even though a purchase option is held to be an integral part of a lease and, therefore, renewed when the lease is renewed, it is not such a provision as will be incorporated in a year-to-year tenancy created by operation of law. Not every provision in a written lease is made a part of a holdover tenancy—only those terms applicable to the new condition of things are so treated. For example, in *Weber* v. *Powers,* 213 Ill 370 (72 NE 1070, 68 LRA 610), a power of attorney to confess judgment for rent due on a written lease was held inapplicable to a holdover tenancy. We believe that the option to purchase for a certain sum 'during the term of this lease' is not such a provision as is applicable to the new tenancy and the new condition of things.

"We, therefore, hold that the option was not a part of the holdover tenancy." 107 NE 792, 793.

The Michigan cases, including *Scott v. Beecher,* 91 Mich 590, recognize that the incidents of a hold-over tenancy must be implied by law. In the case before us, the parties had indicated in the lease that the option to purchase upon lessor's death was to be exercised during the term of the lease. The lease contained no option to renew, and the option to pur-chase was at a fixed price if the lessor died. In such a context the implication of an option to pur-chase as 1 of the terms of the holdover tenancy is without justification.

Reversed. Costs to appellant.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVA-NAGH, SMITH, and O'HARA, JJ., concurred.