PARK FOREST OF BLACKMAN v SMITH

Docket No. 51811. Submitted October 12, 1981, at Lansing.—Decided
January 19, 1982. Leave to appeal applied for.

Park Forest of Blackman brought a summary eviction action
against Darlene Smith following service of a notice to quit on
the ground that Smith had failed to pay her rent in a timely
manner. The district court ordered termination of tenancy.
Smith appealed in Jackson Circuit Court, which affirmed the
decision of the district court, James G. Fleming, J. Smith
appeals by leave granted. *Held:*

1. The district court lacked jurisdiction to hear the case. The
record reveals that subsequent to serving notice to quit upon
Smith, Park Forest accepted a further rent payment from
Smith, thereby waiving its notice. Thus, Park Forest was
required by the section of the Revised Judicature Act governing
summary proceedings to recover possession to serve a new
notice upon Smith before proceeding in the district court.

2. The trial court would be deemed to have erred in the
absence of Park Forest's waiver because the record reveals that
Smith's tardiness in paying the rent did not constitute just
cause to terminate her tenancy. The lease provided a late
charge fee as penalty for late payment of rent and reasonably
led Smith to believe that strict compliance with the lease
provision would not be required and that the late fee and not
the termination of tenancy would be the only penalty. In
addition, Smith's tardiness was not flagrant, nor did it continue
for a long period of time.

3. The trial court erred in quashing Smith's subpoena *duces
tecum.* The record reveals that the evidence requested was
relevant on the issue of just cause.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur 2d, Landlord and Tenant § 1205.
[2, 3] 50 Am Jur 2d, Landlord and Tenant § 1216.
[4-6] 49 Am Jur 2d, Landlord and Tenant § 1067.
   50 Am Jur 2d, Landlord and Tenant § 1215.
[6] 40 Am Jur 2d, Housing Laws and Urban Redevelopment § 33.

1. LANDLORD AND TENANT — TERMINATION OF TENANCY — NOTICE — EVICTION.

A landlord may recover possession of premises let to a tenant on a month to month basis only after termination of the tenancy by a notice to quit, and where the tenant refuses to vacate the premises following service of the notice summary eviction proceedings may be commenced (MCL 600.5714[1][b][iii]; MSA 27A.5714[1][b][iii]).

2. LANDLORD AND TENANT — TERMINATION OF TENANCY — NOTICE — WAIVER — EVICTION.

A landlord who accepts rental payments from a tenant for a period of time subsequent to a date to terminate tenancy contained in a notice to quit waives the notice and must serve the tenant with a new notice before attempting to recover possession or commencing summary eviction proceedings (MCL 600.5714[1][b][iii]; MSA 27A.5714[1][b][iii]).

3. LANDLORD AND TENANT — PUBLIC HOUSING — TERMINATION OF TENANCY — NOTICE.

A tenant or occupant of housing operated by a governmental unit shall not be deemed to be holding over subsequent to service of a notice to quit where the tenancy was not terminated for just cause (24 CFR 880.607, MCL 600.5714[2]; MSA 27A.5714[2]).

4. LANDLORD AND TENANT — TERMINATION OF TENANCY — LATE PAYMENTS — WAIVER.

A landlord who accepts a late rental payment and a late charge waives his right to insist on strict compliance with a lease provision requiring prompt payment, and where such acceptance establishes a course of dealing lateness of payment will not constitute just cause to terminate tenancy.

5. LANDLORD AND TENANT — TERMINATION OF TENANCY — LATE PAYMENTS.

A tenant's failure to make prompt rental payments as required by a lease agreement does not constitute just cause for termination of tenancy, the absence of the landlord's waiver of his right to insist on prompt payment notwithstanding, where the tardiness is not flagrant or does not continue for long periods of time.

6. LANDLORD AND TENANT — PUBLIC HOUSING — TERMINATION OF TENANCY — EVICTION — EVIDENCE.

A tenant of housing operated by the government, during eviction proceedings grounded on just cause to terminate tenancy for failure to make prompt rental payments, may subpoena pay-

ment ledger cards of other tenants in the housing project and
any notices to other tenants regarding late rental payment
policy for the purpose of establishing that the landlord's action
toward the tenant was either arbitrary or consistent with
action in similar cases, the evidence being relevant on the issue
of just cause to terminate tenancy.

*McLellan, Schlaybaugh & Whitbeck* (by *Stephen D. Winter*), for plaintiff.

Legal Services of Southeastern Michigan, Inc. (by *James A. Keedy*), for defendant on appeal.

Before: BASHARA, P.J., and R. B. BURNS and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Defendant leased an apartment from plaintiff, Park Forest, beginning October 1, 1977. The one-year lease was not renewed, but defendant continued to reside in the apartment. In March, 1979, Park Forest served defendant with a notice to terminate the tenancy, and in May, 1979, Park Forest began summary eviction proceedings against defendant, MCL 600.5701 *et seq.;* MSA 27A.5701 *et seq.* After summary trial proceedings, the district court entered an order terminating the tenancy. On appeal, the circuit court affirmed the district court decision. From that decision, defendant appeals by leave granted.

Park Forest is a multi-family, low-income housing project built with funds provided by the Michigan State Housing Development Authority (MSHDA) which holds a mortgage on Park Forest and subsidizes the rent of Park Forest tenants. At the time of trial, defendant's rental payment was $360 per month. Her portion of the payment was $113 per month with the balance paid by MSHDA. Further, defendant's lease provided that rent was due on or before the first of the month. If the rent

was not paid by the first, a $5 late fee was charged for administrative costs.

The defendant lived at Park Forest for 20 months before the summary proceedings were held. For 13 of those months defendant paid her rent after the 5th of the month, always including the $5 late fee. The payment records indicated that defendant's rent was paid late on January 6, 1978, February 8, 1978, March 14, 1978, April 10, 1978, June 14, 1978, October 17, 1978, November 15, 1978, December 10, 1978, January 17, 1979, March 6, 1979 (for February), March 26, 1979, April 9, 1979, and May 8, 1979. These payments together with the late fee were always accepted.

On March 26, 1979, Park Forest served defendant with a notice to terminate the tenancy, demanding possession on or before April 28, 1979. The notice provided that the tenancy was being terminated because the defendant failed to pay her rent in a timely manner. On April 9, 1979, the defendant paid her rent for the entire month of April and did not vacate the premises.

On May 7, 1979, Park Forest began summary proceedings, demanding possession of the apartment. The case was scheduled to be heard on May 22, 1979. On May 8, 1979, the defendant paid the rent for the entire month of May. The defendant received notice of the proceedings on May 12, 1979. The summary proceedings were held on May 29, 1979.

The district court found that the defendant had repeatedly violated the lease by paying her rent late and, therefore, just cause existed for terminating the tenancy.

Defendant first contends that acceptance of rent by Park Forest for a period of time subsequent to

the date possession was demanded in the notice to terminate the tenancy constituted a waiver of the notice to terminate or the creation of a new tenancy.

MCL 600.5714(1)(b)(iii); MSA 27A.5714(1)(b)(iii) permits a landlord to recover possession of a premises only after termination of a tenant's month to month tenancy by notice to quit. If a tenant refuses to vacate the premises after being served with a notice to terminate the tenancy, summary eviction proceedings are then commenced.

Park Forest served the defendant with a notice to terminate on March 26, 1979, demanding possession on or before April 28, 1979. Thereafter, Park Forest accepted rent from the defendant for the months of April and May. The defendant did not vacate the premises, and on May 7, 1979, Park Forest began summary eviction proceedings. However, the defendant did not receive notice of the proceedings until May 12, 1979. Before she received the notice, the defendant paid the rent for May on May 8, 1979.

The issue of whether a landlord waives the notice to terminate the tenancy by accepting rent for a period of time subsequent to the date possession was demanded has not been decided in Michigan. Other jurisdictions have held that acceptance of rent for days subsequent to the final date listed on the notice to terminate is a waiver of the notice to terminate. *Hoefler v Erickson,* 331 Ill App 577; 73 NE2d 448 (1947), *Bernstein v Weinstein,* 220 Ill App 292 (1920), *Major v Hall,* 251 So 2d 444 (La App, 1971), *Jones v Webb,* 320 Mass 702; 71 NE2d 216 (1947). A new notice to terminate then must be sent to the tenant before the summary proceedings can be commenced. Also, see 51C CJS, Landlord and Tenant, § 150(7), p 458, and Anno: *Waiver*

*or revocation by landlord of notice given by him to terminate tenancy,* 120 ALR 557.

We find that the landlord waives the notice to terminate by accepting rental payments for a period of time subsequent to the date specified in the notice. By accepting rent, the landlord leads the tenant to believe that further proceedings regarding the termination of the tenancy are not forthcoming. This is especially true in the instant case where Park Forest accepted defendant's rent for the month of May before the defendant received the notice of the summary proceedings. Defendant testified that because Park Forest accepted her rent payment for the month of May she believed that the matter was settled and her tenancy would not be terminated. We find that this was a reasonable expectation. It is inconsistent for a landlord to assert a termination of the lease and then, after the time specified in the notice has passed, accept rent for a further period of time when the tenant has not received notice that summary proceedings have been commenced. Therefore, Park Forest waived its notice demanding defendant to vacate the apartment on or before April 28, 1979. Since Park Forest waived its notice, it failed to comply with the provision of the statute requiring notice before commencement of summary proceedings, MCL 600.5714(1)(b)(iii); MSA 27A.5714(1)(b)(iii), and, thus, the district court did not have jurisdiction to hear the case.

Furthermore, we find that even if the rent for April 29-30 and May, 1979, had not been accepted, and waiver of the notice to terminate was not in issue, the trial court clearly erred in finding that the tardiness of the payments was just cause to terminate the tenancy.

Both parties agree that the defendant's tenancy

can be terminated only for just cause. 24 CFR 880.607 and MCL 600.5714(2); MSA 27A.5714(2).

Park Forest argues that just cause to terminate the tenancy was established because a provision of the lease required that the rent was to be paid promptly and the defendant repeatedly violated the lease agreement by paying her rent late for 13 out of 20 months.

Defendant argues that, by accepting the late payments along with the $5 late fee, Park Forest waived its right to use the violation of the timely payment provision of the lease for establishing just cause for termination.

Although there are no Michigan decisions directly on point, an analogy can be made to the following cases. In *Patterson v Carrel,* 171 Mich 296; 137 NW 158 (1912), the Court found that a landlord waived his right to enforce a covenant in the lease against assignment by accepting rent from the assignee. In *Sliwinski v Gootstein,* 234 Mich 74; 208 NW 47 (1926), and *Collins v Collins,* 348 Mich 320; 83 NW2d 213 (1957), the Court found that a land contract vendor who habitually accepts late payments waives, as to future payments, strict compliance with the time payment provision of the land contract. The vendor must give notice that he will require strict compliance with the contract before he declares a forfeiture on the ground that the payments were late. Thus, the Supreme Court has held that where a landlord or land contract vendor does not enforce the provision of a lease or land contract after repeated violations of the provision he is precluded at a subsequent time from requiring strict compliance with the provision without first giving notice that such will be expected.

Moreover, other jurisdictions have expressly

held that where the landlord establishes a course of dealing in accepting late payments, the landlord has waived any right to claim a forfeiture for late payment of rent installments without giving the defendant advance notice of his intention to require strict compliance with the terms of the lease. *Quality Materials of Tangipahoa v Labarama, Inc,* 361 So 2d 1285 (La App, 1978), *Pollock v Adams,* 548 SW2d 239 (Mo App, 1977), *Village Development Co, Ltd v Hubbard,* 214 NW2d 178 (Iowa, 1974), *Lauch v Monning,* 15 Ohio App 2d 112; 239 NE2d 675 (1968).

In the present case, even though the lease provided that the rent was due on the first of every month, Park Forest regularly accepted late payments from the defendant (13 out of 20 months). Although late, the defendant regularly paid the rent within the month due with the exception of February, 1979. Furthermore, the lease also provided that if a rental payment was more than 5 days late the tenant was required to pay a $5 charge for administrative costs. The defendant faithfully paid this fee.

We find that by accepting the late rental payment along with the late fee charge Park Forest waived its right to strict compliance with the lease. After accepting late rental payments for 10 months out of 18 prior to the institution of summary proceedings, the defendant reasonably could not expect Park Forest to require strict compliance with the timely payment provision of the lease. Park Forest's conduct did not indicate that termination would result from paying the rent late. As a matter of fact, Park Forest's lease provision, requiring a $5 late fee for rental payments more than 5 days late, implies that the only penalty for a late rental payment is the late fee charge, not

termination of the lease. The lease does not specify that tardy rent payments will be just cause to terminate the tenancy. By waiving strict compliance with the timely payment provision of the lease, just cause to terminate the tenancy was not established.

Moreover, even in the absence of a waiver, tardiness of rental payments still would not be just cause to terminate the tenancy where the tardiness was not flagrant or for long periods of time. Although defendant's rental payments were late, they were made within the month for which they were due, and the required fee was always paid. Therefore, the trial court clearly erred in terminating the tenancy and awarding possession of the apartment to Park Forest. The judgment of the district court is reversed.

We also address defendant's final claim of error. Defendant claims that the trial court abused its discretion by quashing defendant's subpoena *duces tecum* which requested the production of the payment ledger cards of the tenants of Park Forest and copies of any notices given to tenants regarding the policy of Park Forest on late rent payments. The trial court quashed the subpoena on the grounds that it was unreasonable and oppressive.

We agree with the defendant that the trial court abused its discretion. By quashing the subpoena, the trial court prevented the defendant from obtaining relevant evidence on the issue of just cause. It precluded the defendant from obtaining the only evidence available as to whether the action of the landlord was arbitrary or consistent with its action in similar cases. This evidence should have been made available to the defendant.

Reversed.