# STATE OF MICHIGAN

# COURT OF APPEALS

ILLIRIA, INC.,

Plaintiff/Counterdefendant-
Appellant,

v

PINEBROOK PLAZA, LLC, and KANAAN
FAMILY TRUST,

Defendants/Cross-Defendants-
Appellees,

and

MIKHAIL PLAZA, LLC,

Defendant/Third-Party
Plaintiff/Counterplaintiff/Cross-
Plaintiff-Appellee,

and

TITLE CONNECT, LLC, and FIRST
AMERICAN TITLE COMPANY,

Third-Party Defendants.

UNPUBLISHED
October 25, 2018

Nos. 338666; 338671
Macomb Circuit Court
LC No. 2015-002888-CB

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

These consolidated appeals arise from the same lower court file. In Docket No. 338666, plaintiff/counterdefendant, Illiria, Inc. (plaintiff), appeals as of right a stipulated order of

dismissal without prejudice. In Docket No. 338671, plaintiff appeals by delayed leave granted[1] an opinion and order granting summary disposition to defendant/third-party plaintiff/counterplaintiff/cross-plaintiff, Mikhail Plaza, LLC (Mikhail Plaza), regarding Count III of plaintiff's complaint. This Court consolidated the appeals, *Illiria, Inc v Pinebrook Plaza, LLC*, unpublished order of the Court of Appeals, entered June 21, 2017 (Docket No. 338671), and plaintiff has filed a single brief on appeal encompassing both of these consolidated appeals and challenging the trial court's grant of summary disposition to Mikhail Plaza regarding Count III of plaintiff's complaint. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of a dispute related to a February 18, 2010 commercial lease by which defendant/cross-defendant Pinebrook Plaza, LLC (Pinebrook Plaza), rented property located in a plaza to plaintiff, which operated a restaurant at the location. An addendum to the lease executed on the same date as the lease provided that the term of the lease continued until February 28, 2015. Additionally, ¶ k of the addendum also granted to plaintiff a right of first refusal concerning the purchase of the property on which plaintiff's restaurant was located, stating as follows:

> Tenant shall be entitled to a right of first refusal should Landlord decide to sell the premises. Tenant shall be permitted reasonable notice and a reasonable opportunity to respond to such notice, without unreasonably hindering or delaying Landlord.

Plaintiff claims to have sent an October 25, 2014 notice to Pinebrook Plaza of plaintiff's intent to renew the lease in accordance with a renewal provision in the lease, but Pinebrook Plaza denied receiving that notice. In August 2015, the property was sold to Mikhail Plaza. Plaintiff commenced this action. In Count III of its complaint, plaintiff sought specific performance of the lease to allow plaintiff to purchase the property and an order requiring Mikhail Plaza to convey the property to plaintiff. Plaintiff moved for summary disposition in its favor regarding Count III, Mikhail Plaza requested summary disposition in its favor, and the trial court granted summary disposition to Mikhail Plaza regarding Count III. These appeals ensued.

## II. ANALYSIS

On appeal, plaintiff presents arguments challenging the trial court's summary disposition ruling, specifically ¶ k of the addendum, and the issue of whether ¶ k remained in effect at the time that the property was sold to Mikhail Plaza. For the reasons explained below, we conclude that the trial court properly granted summary disposition to Mikhail Plaza with respect to Count III of plaintiff's complaint. Under the language of the lease, plaintiff's multiple late rent payments deprived it of the option to renew the lease, and the right of first refusal provided in the lease addendum did not extend to the period in which plaintiff was a holdover tenant.

---

[1] *Illiria, Inc v Pinebrook Plaza, LLC*, unpublished order of the Court of Appeals, entered June 21, 2017 (Docket No. 338671).

A trial court's decision on a motion for summary disposition is reviewed de novo. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015).

> In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 488; 892 NW2d 467 (2016) (quotation marks and citations omitted).]

The proper interpretation of a contract presents a question of law that is reviewed de novo. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

Plaintiff initially claims that the lease was successfully renewed, arguing that plaintiff and Pinebrook Plaza engaged in a course of dealing that waived or modified the renewal option provision of the lease. Paragraph 5a of the lease contained the following provision concerning plaintiff's option to renew the lease for a second five-year term: "As long as Tenant has Paid rent in a timely manner (Not late more than 3 time [sic] in the 5 year period) Tenant may exercise an option period of Five (5) additional years at the rate of Twenty Five Hundred ($2,500.00) dollars per month. Tenant must Notify the Landlord in writing Ninety (90) days prior to the end of the initial term if Tenant wants to exercise this option." In particular, plaintiff contends that the lease was renewed and remained in effect because Pinebrook Plaza's acceptance of late rent payments in amounts less than that required by the lease served to modify or waive the language in ¶ 5a requiring plaintiff to pay rent in a timely manner in order to exercise its option to renew the lease. According to plaintiff, the trial court should have granted summary disposition in favor of plaintiff or, at a minimum, denied Mikhail Plaza's motion for summary disposition because a genuine issue of material fact existed concerning the effect of the course of dealing between plaintiff and Pinebrook Plaza under the lease.

When interpreting the language of a contractual lease agreement, this Court generally applies ordinary principles of contract interpretation. *Id*. at 24. Thus, we "determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning," and we enforce unambiguous contractual language as written. *Id*. A party claiming breach of contract "must establish (1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014). "[S]pecific performance is an equitable remedy[,]" *Zurcher v Herveat*, 238 Mich App 267, 297; 605 NW2d 329 (1999), and "contracts involving the sale of land are generally subject to specific performance[,]" *In re Smith Trust*, 480 Mich at 26.

An option to purchase or lease property is a preliminary contract for the privilege of purchasing or leasing property at a fixed price within a specified timeframe. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 393; 761 NW2d 353 (2008);

*Oshtemo Twp v Kalamazoo*, 77 Mich App 33, 37; 257 NW2d 260 (1977). Although a lease itself can constitute an interest in real property, a mere option to lease is not such an interest. *Johnson Family Ltd Partnership*, 281 Mich App at 393. "Because an option is essentially an offer that requires strict compliance, it does not create an interest in land until the conditions of the offer are met." *Id.* As our Supreme Court has explained:

> An option is but an offer, strict compliance with the terms of which is required; acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost. [*Le Baron Homes v Pontiac Housing Fund*, 319 Mich 310, 313; 29 NW2d 704 (1947) (quotation marks and citation omitted).]

The "[h]older of an option seeking specific performance has burden of showing his compliance with its terms." *Id.* at 315 (quotation marks and citation omitted).

Furthermore, "[t]he law of contracts recognizes that some agreements are not binding at the outset with respect to a right to performance, entailing conditions precedent to performance." *Wells Fargo Bank, NA v SBC IV REO, LLC*, 318 Mich App 72, 93; 896 NW2d 821 (2016). "A condition precedent . . . is a fact or event that the parties intend must take place before there is a right to performance. If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007) (quotation marks and citation omitted).

In this case, ¶ 5a of the lease made plaintiff's timely payment of rent a condition precedent of plaintiff's option to extend the lease for a second five-year period, and timely payment was specifically defined as not being late in paying rent more than three times in the five-year period of the lease. Plaintiff's manager, Robert Prekaj, admitted that plaintiff was late in paying rent more than five times, rendering the failure to comply with the condition precedent breach undisputed. Also, Prekaj testified that when he mailed the October 25, 2014 letter purportedly notifying Pinebrook Plaza of plaintiff's intent to renew the lease for an additional five year period, a check for three months of back rent was placed in the envelope. Because plaintiff failed to perform the condition precedent of making timely rent payments as defined within the renewal option provision and accordingly failed to strictly comply with the terms of the option provision, plaintiff did not accept the offer for a renewed lease in conformance with the terms proposed in the lease agreement and had no enforceable right to renew the lease. *Le Baron Homes*, 319 Mich at 313; *Harbor Park*, 277 Mich App at 131.

Nonetheless, according to plaintiff, such a finding does not preclude recovery for plaintiff as it argues that Pinebrook Plaza agreed to waive or modify the language in the lease requiring plaintiff not to be late in paying rent more than three times in order to exercise the option to renew the lease. Parties to a contract may "enter into new contracts or modify their existing agreements." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 370-371; 666 NW2d 251 (2003). "However, the freedom to contract does not authorize a party to *unilaterally* alter an existing bilateral agreement. Rather, a party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract." *Id.* at 372. "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing

-4-

mutual agreement to waive the terms of the original contract." *Id*. at 373. "[W]hen a course of conduct establishes by clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms, the requirement of mutual agreement has been satisfied." *Id*. at 374. "[W]aiver requires an intentional and voluntary relinquishment of a known right . . . ." *Id*. at 379. Although affirmative conduct, especially when combined with oral or written representations, can constitute a waiver, mere knowing silence is generally insufficient. See *id*. at 365, 376-379.

In this case, plaintiff relies on the fact that Pinebrook Plaza did not seek to evict plaintiff, provide plaintiff with a termination notice, or hold plaintiff in default for paying rent late. Plaintiff argues that because Pinebrook Plaza allowed plaintiff to remain on the premises and accepted plaintiff's tardy rent payments in amounts less than that called for by the lease, the lease continued in effect past the expiration of the lease term on February 28, 2015. Plaintiff's argument confuses the issue by conflating Pinebrook Plaza's potential remedies for plaintiff's default with the question whether plaintiff maintained a right to exercise its option to renew the lease. The fact that Pinebrook Plaza chose not to seek plaintiff's eviction for paying its rent late does not establish that Pinebrook Plaza agreed to waive or modify the requirements of the separate provision of the lease establishing the condition precedent for plaintiff's option to renew the lease. Paragraph 5a of the lease specifically addresses the effect of plaintiff's multiple late payments of rent by conditioning plaintiff's option to renew on not having been late in paying rent more than three times. Simply stated, how Pinebrook Plaza chose to address plaintiff's late rent payments during the term of the lease does not waive or modify the language of ¶ 5a regarding the effect of the late rent payments on plaintiff's option to renew.[2]

Plaintiff also suggests that a waiver or modification occurred because Pinebrook Plaza never objected to plaintiff's continued presence on the property after the expiration of the lease term on February 28, 2015. But the lease expressly provided for the possibility of plaintiff remaining on the property as a month-to-month holdover tenant following the expiration of the lease term, which suggests that the parties contemplated a situation where plaintiff would remain in possession of the property without having renewed the lease. Hence, plaintiff fails to explain how Pinebrook Plaza's declination to object to plaintiff's continued presence constituted a waiver or modification of the requirements of the lease renewal provision. Rather, plaintiff's argument that Pinebrook Plaza waived or modified the requirements of the lease renewal based on the silence of Pinebrook Plaza is a legally insufficient basis to establish that the renewal

---

[2] Plaintiff's reliance on *Park Forest of Blackman v Smith*, 112 Mich App 421; 316 NW2d 442 (1982), is misplaced. In *Park Forest*, this Court held that a landlord had waived strict compliance with the timely payment provision of a lease by accepting late rental payments, such that just cause to terminate the tenancy was not established. *Id*. at 428-429. But the issue in *Park Forest* concerned the landlord's waiver of its right to seek termination of the tenancy, not the landlord's modification or waiver of a separate provision of the lease establishing the requirements that must be satisfied in order for the tenant to exercise an option to renew the lease. *Id*. The holding in *Park Forest* is thus not pertinent to the issue presented in the instant case.

option provision of the lease was modified by mutual agreement or waived by a course of conduct. *Quality Prod*, 469 Mich at 365, 372-373, 376-379.

Plaintiff makes a related argument that Pinebrook Plaza failed to provide notice that it considered plaintiff to be in default, that plaintiff was thus deprived of an opportunity to cure the default, and that the lease and its provision giving plaintiff a right of first refusal to purchase the subject property therefore remained in effect. Plaintiff refers to the language of ¶ 23.B of the lease, which provides in pertinent part that, among the remedies available to Pinebrook Plaza in the event of a default by plaintiff, Pinebrook Plaza could do the following:

> Maintain [plaintiff's] right to possession, in which case this Lease shall continue in effect whether or not [plaintiff] shall have abandoned the Premises. In such event [Pinebrook Plaza] shall be entitled to enforce all of [Pinebrook Plaza's] rights and remedies under this Lease, including the right to recover the rent and any other charges and Adjustments as may become due hereunder . . . .

Again, plaintiff is confusing the remedies available to Pinebrook Plaza upon plaintiff's default during the express term of the lease with plaintiff's option to renew the lease after filling a condition precedent. Paragraph 23.B. does not contain any language indicating that it applies beyond the term of the lease itself. In other words, if plaintiff defaulted during the original term of the lease, Pinebrook Plaza was entitled under ¶ 23.B. to hold plaintiff accountable for its rent obligations during the remainder of the lease term even if plaintiff abandoned the premises, during which time all of the lease provisions also remained in effect. However, nothing in ¶ 23.B. permits such a set of circumstances to continue beyond the express term of the lease— i.e., February 28, 2015. The mere fact that plaintiff remained on the premises after the lease term expired on February 28, 2015, does not somehow make ¶ 23.B. applicable.

Indeed, such a scenario is dealt with under a separate lease provision in ¶ 20, which provides as follows:

> **Holding Over.** If [plaintiff] remains in possession of the Premises or any part thereof after the expiration of the term hereof *with the express written consent* of [Pinebrook Plaza], such occupancy shall be a tenancy from month to month at a rental in the amount of one hundred twenty percent (120%) of the last Monthly Minimum Rent, plus all other charges payable hereunder, and upon all the terms hereof applicable to a month to month tenancy. [Emphasis added.]

In this case, plaintiff makes no claim that it had obtained "the express written consent" of Pinebrook Plaza to become a hold over tenant as that term is contemplated in the lease. Moreover, as will be explained below, even if plaintiff had successfully become a month-to-month holdover tenant as that term is contemplated in the lease, this provision nevertheless does not indicate that the right-of-first-refusal provision continues to apply during the holdover period. Accordingly, plaintiff cannot rely on its continued possession of the leased premises beyond February 28, 2015, when the lease term expired to claim that the lease—including the important right-of-first-refusal provision—remained in effect and enforceable beyond February 28, 2015, because neither ¶ 20 nor ¶ 23.B. provide for the lease term to be extended under the circumstances here. Rather, the lease terms would only have stayed in effect if plaintiff had

successfully obtained a renewal of the lease for a second term. Furthermore, assuming without deciding that plaintiff's continued possession during the original lease term after making late payments was under the terms of ¶ 23.B., the renewal option in ¶ 5a was still subject to the condition precedent requiring plaintiff not to make more than three late payments of rent in the five-year lease period. It is undisputed that this condition precedent was not satisfied, and plaintiff therefore could not exercise the option to renew the lease regardless whether ¶ 23.B. was applicable to the situation. We note that the renewal provision has no language that required providing notice to plaintiff about any "default" or giving plaintiff an opportunity to "cure" any default. Hence, plaintiff failed to satisfy the condition precedent for exercising its option to renew the lease for a second five-year term pursuant to the renewal provision in the lease. *In re Smith Trust*, 480 Mich at 24.

Next, plaintiff argues that it was a holdover tenant after the expiration of the lease term on February 28, 2015, and that plaintiff still retained the right of first refusal regarding the purchase of the property during the holdover period, including at the time that the property was sold to Mikhail Plaza.

As previously stated, plaintiff could not be considered a holdover tenant as that term was defined in ¶ 20 of the lease because plaintiff did not actually obtain express written consent from Pinebrook Plaza to remain in possession of the premises after the lease expired on February 28, 2015. Moreover, even if the course of conduct between plaintiff and Pinebrook Plaza could somehow be considered a modification or waiver of the provisions of ¶ 20 involving the amount of rent and the need for written consent, there still is no language in ¶ 20 to indicate that the right-of-first-refusal provision remained in force during the holdover period. As previously noted, ¶ 20 states that the month-to-month tenancy is to be "upon all the terms *hereof applicable to a month to month tenancy*." (Emphasis added.) Contrary to plaintiff's apparent understanding, this provision does not say that all terms *in the lease* necessarily continue to apply to a month-to-month tenancy. The sole provision explaining the terms of such a month-to-month tenancy is contained in ¶ 20, which is limited to outlining the rent and charges that the tenant is to pay in exchange for its continued holdover possession once written consent is obtained from the landlord. There similarly is nothing in the right-of-first-refusal provision to indicate that it applies to a month-to-month holdover tenancy. Paragraph 20 is therefore inapplicable, and plaintiff's reliance on this provision to show that the right-of-first-refusal provision necessarily remained in effect after the expiration of the lease term is unavailing.

Nevertheless, "[a]s a general rule, when a tenant comes rightfully into possession of land by permission of the owner and continues to occupy the same after the time for which, by such permission, he had the right to hold the same, he becomes a tenant by sufferance." *Felt v Methodist Ed Advance*, 251 Mich 512, 517; 232 NW 178 (1930). More specifically, a person who holds over without right after lawfully possessing the land "becomes a tenant at sufferance, if the owner suffers him to remain in possession a sufficient length of time to imply an intentional acquiescence in the occupancy . . . ." *Sch Dist No 11 of Alpine Twp v Batsche*, 106 Mich 330, 334; 64 NW 196 (1895). "An express consent to occupancy is not necessary to create such a tenancy." *Id*. Moreover, the "tenancy is of such a nature as necessarily implies an absence of *any* agreement between the owner and the tenant, and if express assent is given by the owner to such possession the tenancy is thereby, *instanter*, converted into a tenancy at will, or from year to year, according to the circumstances." *Id*. (quotation marks and citation omitted).

Applying these principles to the case before us, the issue becomes whether the right of first refusal contained in ¶ k of the addendum was a term of the lease that somehow became automatically applicable to the holdover period despite the fact that a formal agreement between plaintiff and Pinebrook Plaza was no longer in effect. "A right of first refusal, or preemptive right, is a conditional option to purchase dependent on the landowner's desire to sell." *Randolph v Reisig*, 272 Mich App 331, 336; 727 NW2d 388 (2006). This Court has previously explained the nature of a right-of-first-refusal agreement:

> An option contract does not create an interest in land. A right of first refusal gives the promisee fewer rights than an option contract. The promisee in an option contract holds the power to purchase the property at will for the specified price during the specified period. But the option contract does not create an interest in land. Conversely, the promisee in a right of first refusal agreement cannot exercise any right to purchase property unless the seller decides to sell to a different buyer. Because the right of first refusal gives the holder fewer rights than an option, we conclude that if the latter does not create an interest in land, neither does the former. Indeed, Michigan courts have generally treated similar agreements containing first-refusal rights as contracts, not property interests . . . . [*Id.* at 338-339 (citation omitted).]

Regarding the right-of-first-refusal provision in the lease at issue in this case, it is true that generally, "when a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year; but the landlord may treat him as a trespasser, or as a tenant holding upon the terms of the original lease." *Glocksine v Malleck*, 372 Mich 115, 119; 125 NW2d 298 (1963) (quotation marks and citation omitted). Despite the seemingly broad sweep of this general rule, our Supreme Court has explained that it is not the case that all lease terms automatically carry over and apply to a holdover tenancy:

> A presumption arises from the holding over by the tenant and acceptance of rent by the landlord, in a case of a lease for a term of years, that the parties intend to renew the tenancy for a period of 1 year. There is no implication that the lease itself as a binding contract is to be continued in force. Its provisions may be inquired into to determine the terms under which the tenant holds and the nature of his tenancy. In an action to recover the rent, the liability would not be predicated upon the agreement of the tenant to pay as embodied in the lease, but upon the implied contract to pay according to the terms of the lease.
>
> . . . Thus the law in this State is not that the terms on which a holdover tenant holds are necessarily the same as those of the lease, but rather that the terms of the original tenancy may be inquired into to determine the terms of the holdover tenancy. The most obvious illustration of the fact that all terms of the lease are not necessarily applicable to the holdover tenancy is that, although the lease may provide for a term of several years, each holdover tenancy is for only one year. . . .
>
> Our Court in its opinions has distinguished between the nature and terms of a renewal tenancy and those of a holdover tenancy. When a lease contains an

-8-

option to purchase during its term and an option to renew the lease on the same terms, a renewal of the lease carries with it the right to exercise the purchase option during the renewed term. However, an option to purchase which expires at the end of a lease term, or at the end of a renewal thereof, cannot be exercised during the holdover tenancy. [*Id*. at 120-121 (quotation marks and citations omitted).]

In *Glocksine*, our Supreme Court held that "an option to purchase during the term of a lease is not one of the provisions of the lease which will automatically accompany a holdover tenancy," emphasizing that the nature and terms of a tenancy created by a tenant holding over are implied by law. *Id*. at 123-125. The *Glocksine* Court reasoned, as especially pertinent to the instant case, that an option provision was not essential to regulating the parties' landlord-tenant relationship, that the parties could have included an express lease provision allowing for the option provision to continue beyond the term of the lease, and that the legal rights of a holdover tenant should not by enlarged by implication beyond the terms necessary to maintain the landlord-tenant relationship. *Id*. at 122-123.

Moreover, "first refusal agreements, like option agreements, must be for a definite period of time. The absence of specific time limits will not render the agreement void. Rather, the courts will construe the agreement to be for a reasonable period of time." *Brauer v Hobbs*, 151 Mich App 769, 777; 391 NW2d 482 (1986); see also *Randolph*, 272 Mich App at 336-337 (citing *Brauer* for these propositions).

In this case, neither the lease nor the addendum specifically provides that the right of first refusal extends to any holdover period, and most importantly, neither the lease nor the addendum provides that this provision applies to a tenancy at sufferance. The right of first refusal must be limited in duration to a reasonable time, *Brauer*, 151 Mich App at 777, and contractual language granting a right of first refusal is construed narrowly, *LaRose Market, Inc v Sylvan Center, Inc*, 209 Mich App 201, 205; 530 NW2d 505 (1995). The right of first refusal here is reasonably understood as limited to the duration of the lease given that the right was granted in the context of a lease, the lease contained a specific provision for effecting a renewal of the entire lease,[3] the lease contained a separate provision that addressed a tenant's holdover without indicating that the right of first refusal applied to the holdover period, and there is no language in the lease or the addendum suggesting that the right of first refusal extended beyond the expiration of the lease.

Plaintiff has failed to establish that the right of first refusal contained in ¶ k of the lease addendum was a term that was applicable to a tenancy at sufferance or a holdover tenant under ¶ 20 of the lease such that the right of first refusal remained in effect during the holdover period.[4]

---

[3] Notably, and as previously discussed, plaintiff failed to properly avail itself of this option.

[4] We note that even if plaintiff were considered a holdover tenant under ¶ 20 of the lease, our conclusion would be the same. There is no language in the lease or addendum expressly stating that the right of first refusal constitutes a term applicable to a month-to-month tenancy. In discerning the meaning or import of an undefined legal phrase or term of art contained in a

Considering that a right of first refusal provides a promisee with even fewer rights than a purchase option, *Randolph*, 272 Mich App at 338-339, we conclude that a right of first refusal is clearly not essential to the parties' landlord-tenant relationship and is not a lease provision that automatically carries over to a tenancy at sufferance created by operation of law, see *Glocksine*, 372 Mich at 122-125. Plaintiff accordingly did not retain the right of first refusal after the lease expired on February 28, 2015, and did not have that right when the property was sold to Mikhail Plaza.

For all of the reasons stated above, the trial court did not err by granting summary disposition in favor of Mikhail Plaza.[5]

Affirmed. Mikhail Plaza, having prevailed, may tax costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause

---

contract, a court may consider "common law understandings and case law explanations that those familiar with such terms of art are held to understand." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 357-358, 357 & n 9; 596 NW2d 190 (1999).

[5] To the extent our reasoning differs from that of the trial court, we still affirm a trial court's ruling on a motion for summary disposition that reached the correct result. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015).